535 A.2d 1210

In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Fee Title Underlying Easements Previously Acquired for Legislative Route 67045, Section 9A, in the City of Philadelphia. Sidney Bernstein and Paulette Bernstein, h/w, Appellants.

Argued June 8, 1987, before Judges CRAIG, DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Lewis Kates, Kates* & *Mazzocone,* for appellant.

*William J. Cressler,* Assistant Counsel, with him, *Scott M. Olin,* Assistant Counsel, *Spencer A. Manthorpe,* Chief Counsel, *Henry G. Barr,* General Counsel, for appellee.

OPINION BY JUDGE DOYLE, January 7, 1988:

Sidney and Paulette Bernstein (Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County, which sustained the Department of Transportation's (DOT's) preliminary objections to Appellants' petition for the appointment of a Board of View. We affirm.

This case is another of those arising out of the construction of the Vine Street Expressway (Expressway)

and involves the premises located at 245-247 North Sixteenth Street. In February of 1971, DOT filed a declaration of taking to "condemn an easement [interest] for highway purposes" in the property.[1] Subsequent to the filing of this declaration of taking, DOT tendered to Appellants estimated just compensation in the amount of $45,800. A Board of View was then convened to assess damages but prior to the viewers decision, the parties reached an agreement and DOT agreed to pay $7,500 in addition to the $45,800 in estimated just compensation. This agreement, of course, concerned the Appellants' easement interest only and *not* their underlying fee interest.

As originally designed, the Expressway would have utilized the property for a highway interchange. Due to community opposition and lack of funding, the construction of the highway was delayed for a long period of time. During this delay, the plans for the Expressway were "scaled down" and a new design called for the property to be used for construction of a multi-level parking garage adjacent to the actual roadway. In order to construct the garage, DOT entered into a joint use agreement with the Philadelphia Parking Authority (Authority) on January 17, 1984. Under the terms of this agreement, DOT agreed to acquire fee simple title to the property.[2]

---

[1] Under Section 210 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §670-210, the Department of Transportation could only condemn an easement for highway purposes in properties actually required for construction of state highways. However, Section 3 of the Act of December 7, 1979, P.L. 479, *as amended*, 71 P.S. §513(e) now allows the Department to acquire land in fee simple for highway purposes.

[2] The Department's attempt to build a parking garage on this and other nearby properties has spawned a great deal of litigation. *See e.g., E-Z Parks, Inc. v. Philadelphia Parking Authority*, 110 Pa. Commonwealth Ct. 629, 532 A.2d 1272 (1987) *(E-Z Parks III); E-Z*

In order to effectuate this agreement, DOT filed a second declaration of taking on July 25, 1984. As paragraph eight of this declaration of taking explained, "[t]he nature of the title hereby condemned is the fee title underlying the easements for highway purposes previously acquired by the Department." Appellants did *not* file preliminary objections to this declaration of taking, but instead, on September 9, 1984, filed a petition for the appointment of viewers under Section 502(a) of the Eminent Domain Code (Code).[3] In paragraph four of their petition, Appellants alleged that "[t]he Commonwealth of Pennsylvania acquired, appropriated and condemned 245-247 North 16th Street, Philadelphia, Pa., in fee simple or absolute title." In fact, DOT's declaration of taking, as already recited, did not condemn the entire fee interest, and DOT therefore filed preliminary objections to Appellants' petition requesting the common pleas court to strike the Appellants' petition. The crux of DOT's position was summarized in paragraph four of its preliminary objections where it stated "[t]he petition filed by Bernstein alleges a taking by the Commonwealth of a property interest far in excess of that actually acquired by the Commonwealth pursuant to a Declaration of Taking filed in Philadelphia County, at July Term, 1984, Number 4038."

---

*Parks, Inc. v. Philadelphia Parking Authority,* 103 Pa. Commonwealth Ct. 627, 521 A.2d 71 (1987) *(E-Z Parks II); E-Z Parks, Inc. v. Larson,* 91 Pa. Commonwealth Ct. 600, 498 A.2d 1364 (1985), *aff'd per curiam,* 509 Pa. 496, 503 A.2d 931 (1986) *(E-Z Parks I),* as well as *Miller v. Department of Transportation,* 111 Pa. Commonwealth Ct. 240, 533 A.2d 819 (1987) *(Miller II); Miller v. Department of Transportation,* 91 Pa. Commonwealth Ct. 622, 498 A.2d 1370 (1985) *(Miller I).*

[3] Act of June 22, 1964, Sp. Sess., P.L. 84, *as amended,* 26 P.S. §1-502(a).

In response to DOT's preliminary objections, Appellants filed an answer on October 11, 1984, wherein they averred that:

(d) The purpose for which Premises had been condemned in First Condemnation [February 25, 1971] had been abandoned and Premises was not when the Declaration of Taking was filed by PennDOT to commence this action (hereafter 'Second Condemnation') [July 25, 1984] and is not now required for any transportation purposes within the compass of law or for any proper purpose for which PennDOT can condemn a fee or any lesser interest in Premises.

(e) Even assuming the purposes for which PennDOT instituted Second Condemnation to be a valid transportation purpose and therefore within its authority to institute condemnation proceedings, Bernstein was at the time Second Condemnation was commenced the fee simple owner of the premises, unencumbered by any easement in favor of PennDOT, the same having been abandoned.

(f) The purpose for which PennDOT commenced Second Condemnation was for parking purpses (sic), to wit, to have constructed a parking garage for use by the general public and not for any valid transportation purpose.

(g) The proposed parking garage which is to be constructed on premises is not necessary for and shall not be used by PennDOT for any purpose, including but not limited to the maintenance of the Vine Street Expressway.

(h) Concomitant herewith, Bernstein is instituting in this Court an action to quiet and confirm his fee simple title to premises.

Wherefore, Sidney Bernstein and Paulette Bernstein pray this Honorable Court to determine that at the time this action was commenced, they were unencumbered fee simple owners of premises known and numbered 245-247 N. 16th Street, Philadelphia, Pa., *that this proceeding be dismissed and the Declaration of Taking filed by PennDOT be declared void* with leave, however, to PennDOT to file an Amended Declaration of Taking specifically providing that its condemnation is of 'the unencumbered fee' simple interest to said premises and for a proper transportation purpose. (Emphasis added.)

On March 19, 1985, the trial court, without holding an evidentiary hearing, sustained DOT's preliminary objections. The court ruled that Appellants had waived the issues of abandonment and DOT's failure to take the property for a proper transportation purpose because Appellants had not filed preliminary objections to DOT's declaration of taking within thirty days of notice to them of the declaration as mandated by Section 406 of the Code, 26 P.S. §1-406. The court ruled that, in any event, there was no abandonment of DOT's easement interest. This appeal followed.[4]

Appellants raise four issues on appeal: first, whether DOT had a right to file preliminary objections to Appellants' petition; second, whether the trial court erred by failing to conduct an evidentiary hearing to resolve factual issues; third, whether DOT abandoned its easement interest in the property when it decided not to build the expressway as originally planned and instead

---

[4] Our scope of review in an eminent domain action where the trial court has sustained preliminary objections is limited to determining whether the trial court committed an error of law or abused its discretion in reaching its conclusions. *Bethany Congregation Appeal*, 92 Pa. Commonwealth Ct. 200, 499 A.2d 6 (1985).

built a parking garage; fourth, whether Appellants were denied *all* recovery because of the trial court's refusal to appoint a Board of View.

## DOT's Right To File Preliminary Objections to a Petition for a Jury of View Under Section 502(a) of the Code

Appellants' first argument is that a condemnor may not file preliminary objections to a petition for the appointment of viewers filed by a condemnee pursuant to Section 502(a) of the Code, 26 P.S. §1-502(a), the section which concerns *de jure* condemnations. They contend that such preliminary objections are only proper when the condemnee is proceeding under Section 502(e) of the Code, 26 P.S. §1-502(e) which deals with inverse or *de facto* condemnations. Appellants cite no statutory nor decisional authority to support this proposition, nor have we been able to find any. And while it is certainly more common for a condemnor to file preliminary objections to a petition alleging a *de facto* taking under Section 502(e) in order to resolve the myriad legal and factual issues involved in such cases, *see e.g., Jacobs v. Nether Providence Township,* 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972), this Court has often sanctioned the use of preliminary objections in proceedings under Section 502(a). *See e.g., Re: Condemnation for L.R. 23047,* 79 Pa. Commonwealth Ct. 512, 470 A.2d 1080 (1984); *see also Gaebel v. Thornbury Township,* 8 Pa. Commonwealth Ct. 399, 303 A.2d 57 (1973); *Upper Montgomery Joint Authority v. Yerk,* 1 Pa. Commonwealth Ct. 269, 274 A.2d 212 (1971). We therefore hold that DOT's preliminary objections were procedurally proper.[5]

---

[5] We note that Section 406 of the Code, 26 P.S. §1-406, which sets out the procedure for filing preliminary objections, technically provides only that the *"condemnee* may file preliminary objections"

### WAIVER OF ABANDONMENT ISSUE

Setting aside for the moment Appellants' second contention, we shall now consider the abandonment issue. We find that Appellants have waived this argument by failing to file their own preliminary objections to DOT's second declaration of taking. Section 406(a) of the Code provides:

> *Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.* The court upon cause shown may extend the time for filing preliminary objections. *Preliminary objections shall be* limited to and shall be *the exclusive method of challenging* (1) the power or the right of the condemnor to appropriate condemned property, unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. *Failure to raise these matters by preliminary objection shall constitute a waiver thereof.*

26 P.S. §1-406(a) (emphasis added). *See also Nelis v. Redevelopment Authority of Allegheny County,* 4 Pa. Commonwealth Ct. 533, 287 A.2d 880 (1972).

Paragraphs (f) and (g) of Appellants' answer[6] to DOT's preliminary objections, recited above, clearly

---

and that there is not a corresponding provision in the Code providing a procedure for the filing of preliminary objections by the *condemnor.* Appellants, properly so, have not made this ostensible, but ephemeral, argument the basis of their appeal.

[6] Appellants' answer clearly alleges facts which are in the nature of "new matter." Although such allegations would be inappropriate and could not be pleaded in an answer to preliminary objections under the Rules of Civil Procedure, even in a case involving eminent domain issues, *see E-Z Parks, Inc. v. Larson,* 91 Pa. Commonwealth Ct. 600, 498 A.2d 1364 (1985), *aff'd per curiam,* 509 Pa.

presents the underlying issue of whether the construction of a parking garage is for a transportation purpose. An issue of this type palpably challenges the condemnor's power to acquire the premises, *Conway Appeal,* 60 Pa. Commonwealth Ct. 520, 522-23, 432 A.2d 276, 278 (1981); *see also Gigliotti v. Redevelopment Authority of City of New Castle,* 362 F. Supp. 764 (W.D. Pa. 1973), *aff'd mem.,* 492 F.2d 1238 (3d Cir. 1974), and since this challenge goes to the very purpose of the condemnation and was not raised by preliminary objection to DOT's second declaration of taking, under Section 406(a), the issue is waived.

Likewise, Appellants' conclusory contention that DOT has abandoned its easement interest in the property—due to delay and because the construction of a parking garage in the newly designed highway, is not a transportation purpose—should have been raised by way of preliminary objections to the declaration of taking. *See Miller v. Department of Transportation,* 91 Pa. Commonwealth Ct. 622, 498 A.2d 1370 (1985). We have previously recognized that the nature of the property interest a party possesses, if any, in an eminent domain proceeding, is properly raised by way of preliminary objections *Re: Condemnation for L.R. 23047. See also Sunbeam Coal Corp. v. Pennsylvania Game Commission,* 37 Pa. Commonwealth Ct. 469, 391 A.2d 29 (1978). And the failure to raise the issue by means of preliminary objections constitutes a waiver of such issue. *Re: Condemnation for L.R. 23047.* Since the

496, 503 A.2d 931 (1986), such pleading is proper in an action filed, as here, under the Eminent Domain Code. *See also* comment of Joint State Government Commission following Section 406 of the Code. For cases under Section 502(a) where such "answers" have been utilized, *see Sepko Appeal,* 84 Pa. Commonwealth Ct. 359, 479 A.2d 665 (1984) and *Department of Transportation v. Pruss,* 15 Pa. Commonwealth Ct. 573, 329 A.2d 865 (1974).

abandonment issue was not timely raised by Appellants, it is jurisdictionally waived.[7]

## TRIAL COURT'S FAILURE TO CONDUCT EVIDENTIARY HEARING TO RESOLVE FACTUAL ISSUES FORMULATED BY PRELIMINARY OBJECTIONS

The Appellants' second argument, that the common pleas court failed to hold an evidentiary hearing to resolve the factual issues raised by *DOT's* preliminary objections and Appellants' answer thereto, is not without attraction because the law generally is that, "[t]he code has established a special role for preliminary objection proceedings in an eminent domain case, in that they there provide a vehicle by which the common pleas court can resolve all legal and factual questions of entitlement at the outset, with an evidentiary hearing if necessary, before appointing the viewers and assigning them to do their work of quantifying an award." *Carroll Township v. Jones,* 85 Pa. Commonwealth Ct. 400, 402, 481 A.2d 1260, 1261 (1984). It is further established law that "preliminary objections under the Code are the exclusive method by which *a governmental agency* may

---

[7] We note in passing that the related issues of DOT's abandonment of property related to the construction of the Vine Street Expressway and the construction of a parking garage as a "highway related use" were extensively addressed in *E-Z Parks, Inc. v. Larson,* 91 Pa. Commonwealth Ct. 600, 498 A.2d 1364 (1985), *aff'd per curiam,* 509 Pa. 496, 503 A.2d 931 (1986) *(E-Z Parks I);* as well as in *Miller v. Department of Transportation,* 91 Pa. Commonwealth Ct. 622, 498 A.2d 1370 (1985), *(Miller I).* We reiterate here what we said in *Miller I,* "[t]hat for purposes of a highway easement, the 'external act' of abandonment is the formal vacation of the easement in the manner required by law. Breisch v. Locust Mountain Coal Co., 267 Pa. 546, 110 A. 242 (1920). See Section 210 of the State Highway Law, Act of June 1, 1945, P.L. 1242, as amended, 36 P.S. §670-210." *Miller I,* 91 Pa. Commonwealth Ct. at 629, 498 A.2d at 1374. *See also Fried-El Corp. Appeal,* 81 Pa. Commonwealth Ct. 493, 474 A.2d 713 (1984).

raise legal and factual objections to a petition for viewers alleging a de facto taking." *Id.* (emphasis added). The issue then subtly presented is whether this same analytic approach should be used to determine these same issues where *the condemnees* have raised them by filing an answer in a de jure taking (under §502(a) proceeding), rather than where a governmental agency has raised them by filing preliminary objections in a de facto (§502(e)) taking. We determine that the same analysis should be employed. But, the flaw in the Appellants' argument then becomes apparent because they, as condemnees, *did not* raise those issues within thirty days following DOT's declaration of taking. Had the viewers been appointed pursuant to Appellants' petition, the resolution of these issues would have had to be either preliminarily submitted first to the Board of View, or postponed to await an appeal to the common pleas court subsequent to the viewers' report; in either event we have already determined such a procedure to be improper. *Carroll Township.* If the Appellants, as condemnees, "were to be permitted to go before the viewers without resolution of the threshold questions and then to seek to raise them again on appeal from the viewers, such an approach would defeat the scheme and purpose of the Code's special procedure." *Id.* at 402-403, 481 A.2d at 1261. Furthermore, if we were to countenance a procedure whereby these issues could be raised by pleadings filed beyond the thirty days permitted under Section 406(a) of the Code, we would be allowing condemnees to do indirectly what they are not permitted to do directly. We further note that the prayer for relief in the Appellants' answer, "that this proceeding be dismissed and the Declaration of Taking filed by PennDOT in this action be declared void," is contradictory to their petition for the appointment of viewers to determine damages.

ASSESSMENT OF DAMAGES FOR UNDERLYING FEE INTEREST

Last, Appellants contend that they will be denied all recovery by the trial judge's refusal to appoint viewers. This is simply, and factually, not true. As the trial court aptly noted "[h]ad the petition for Appointment of a Board of View requested determination of just compensation *for the underlying fee,* this Court might have been inclined, without more, to grant Condemnee's Petition." (Emphasis added). Appellants were, and still are, free to file a petition under 502(a) to assess damages for the taking of the fee underlying the highway easements. *See Miller.*

Affirmed.

### ORDER

The order of the Court of Common Pleas of Philadelphia County, No. 4038, July Term, 1984, dated March 15, 1985, sustaining the Department of Transportation's preliminary objections, is affirmed.

President Judge CRUMLISH did not participate in the decision in this case.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

Condemnation is accomplished by filing a declaration of taking, in writing, in which the condemnor states what is the nature of the title to be acquired. Section 402 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-402. While the Code does not indicate in any way the nature of the interest acquired by the condemnation, it does require that the declaration of taking contain a statement of the nature of the title acquired and it is by reference to this statement that it is determined what interest in the land was acquired. Thus, in 1971,

the Commonwealth of Pennsylvania, Department of Transportation (DOT) took an easement in the property and declared it to be for highway purposes. It was not until thirteen years later, in 1984, that DOT filed a declaration of taking and declared that it was taking a fee simple estate in the land underlying the previous easement.

The condemnee filed a petition for the appointment of a Board of View, alleging that the prior easement had been extinquished by abandonment so that what the condemnor took was a complete fee simple estate. DOT filed preliminary objections contending that it had not abandoned the original easement and that the taking of the burdened property was a complete taking of the land unburdened by the easement.

The trial court dismissed the petition for the appointment of a Board of View, finding that there was no abandonment of the easement and that mere non-use, as a matter of law, does not result in an abandonment. DOT expressly indicated the nature of the interest it was taking with each declaration. Unless a statute expressly provides that a fee simple estate must be taken, only an easement will be acquired if that is all that is required. *Pennsylvania Game Commission v. Renick*, 21 Pa. Commonwealth Ct. 30, 342 A.2d 824 (1975).

Combining the taking of the servient estate with the easement previously taken, DOT now believed that it had achieved its purpose in obtaining a fee simple estate in the land. Restatement of Property §507 (1936) provides that an easement is extinguished by the taking in fee of the servient tenement. In this case, however, the taking of the servient tenement was expressly limited to the easement thereon.

Section 408 of the Code, 26 P.S. §1-408, provides that upon relinquishment of the property by the condemnor, title is revested in the condemnee as of the

date of the filing of the declaration. In the context of eminent domain, ownership of property is viewed as consisting of various interests in the physical object, each interest bearing on the value of the property. Obviously, ownership of a servient estate burdened with an easement has a value different from that when both interests are combined.

It is contended that pursuant to section 406 of the Code, 26 P.S. §1-406, the trial court was correct in holding a hearing to determine the question of abandonment after the filing of preliminary objections. Section 406 of the Code provides that preliminary objections are the exclusive method to challenge the lawfulness of the declaration of taking and any procedure used in the taking (*i.e.*, the power or right to condemn). The purpose of this section is to attack the regularity or legality of the proceeding so that when the matter comes before the Board of View, the issue is one of damages only. DOT's preliminary objections did not raise this issue. They raised the question of the abandonment of the easement, the effect of which had to do with determining the extent of damages and not the right or power to condemn. The viewers were certainly competent to decide the question, in limine. *See Re: Condemnation for Legislative Route 23047,* 79 Pa. Commonwealth Ct. 512, 470 A.2d 1080 (1984). The viewers' report was subject to exceptions in the trial court.

The procedure for determining damages in eminent domain is exclusive and provided for in the Code. The trial court's dismissal of the petition for the appointment of viewers was in error. It was for the Board of View, a judge or a jury in a trial de novo, to determine whether there was an abandonment, in fixing value.

I would reverse and remand to the trial court, with orders to appoint a Board of View to determine the value of the taking, consistent with this opinion.