Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Melron Industries, Inc. v. Betty J. Worley, Appellant.

Argued January 8, 1976, before Judges CRUMLISH, JR., ROGERS and BLATT, sitting as a panel of three.

358

*Patricia L. Kotchek,* with her *Richard P. Nuffort,* and *Geisenberger, Zimmerman, Pfannebecker & Gibbel,* for appellant.

*W. Jeffrey Sidebottom,* with him *Barley, Snyder, Cooper & Mueller,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE ROGERS, February 17, 1976:

The husband of the appellant, Betty J. Worley, was killed in a work-related accident and she was awarded workmen's compensation death benefits for herself and on behalf of her two children by Worley on November 5, 1971.[1]

In October 1971, Lester Dull, a man married to another, took up residence with the appellant and her children in the appellant's mobile home. Mrs. Worley and Dull cohabited and a child was born to them in March 1973. From time to time each provided the other with financial support.

In August 1973, the late Mr. Worley's employer filed a petition to terminate the workmen's compensation bene-

---

1. The benefits for these chidren are, of course, not affected by this proceeding.

fits it was required to pay to Mrs. Worley because she was living with Dull "in meretricious relationship and not married." Section 307 of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §562, after directing the payment of benefits to widows, widowers and other dependents, and for the cessation of benefits to dependents who should remarry, provides:

> "Provided, however, That if, upon investigation and hearing, it shall be ascertained that the widow or widower is living with a man or woman, as the case may be, in meretricious relationship and not married, or the widow living a life of prostitution, the board may order the termination of compensation payable to such widow or widower. If the compensation payable under this section to any person shall, for any cause, cease, the compensation to the remaining persons entitled thereunder shall thereafter be the same as would have been payable to them had they been the only persons entitled to compensation at the time of the death of the deceased."

A referee, after hearing, denied the prayer of the petition, concluding on the basis of an exploration of the Latin root of the word meretricious that the relationship of Mrs. Worley and Dull was merely a "practical, pragmatic relationship in which claimant and Mr. Dull find themselves placed due to circumstances beyond their control," apparently because of Dull's marital status. The Workmen's Compensation Appeal Board disagreed with the referee, reversed his action and ordered that Mrs. Worley's compensation be suspended while she continued to live with Dull. We agree with the Board's determination and affirm.

The appellant urges upon us a definition of the word meretricious as used in Section 307 which would limit its application to instances where unmarried persons not only cohabit but additionally purport or hold themselves

out to be married. She says that since she and Dull make no pretense of being married, their relationship is not meretricious. This contention suggests that the Legislature intended to discriminate in favor of persons who flout the marriage convention and against those who confer upon it the respect of feigned observance. We prefer to believe that the Legislature, as we, find truth in La Rochefoucauld's familiar epigram that hypocrisy is the homage that vice pays to virtue.

It may be a tribute to the imagination of counsel, that there appears to be no precedent for the appellant's thesis. The statement that in cases where the issue was whether a common law marriage existed courts have used the term meretricious to describe only irregular relationships purported to be regular is unfounded. We have reread those cases and find that the word is used to describe the condition of men and women living together both with and without pretense of marriage. *See,* for example, *Kiska v. C. H. Ziegenfuss Co., Inc.,* 154 Pa. Superior Ct. 100, 35 A.2d 532 (1943) ; *Wolford v. Whiterock Quarries, Inc.,* 144 Pa. Superior Ct. 577, 20 A.2d 887 (1941) ; *Pegee v. Ricchini,* 140 Pa. Superior Ct. 56, 12 A.2d 830 (1940).

The appellant's further argument that she should not be deprived of benefits because recent amendments to the Pennsylvania criminal statutes have abolished the crimes of adultery and fornication is also without merit. Section 307 authorizes the Board to disqualify persons living in meretricious relationships and not married without reference to criminality. The appellant's argument in this respect seems to imply that Section 307 simply benightedly and anachronistically punishes conduct once distasteful to the Legislature now no longer a legitimate concern of the State. On the contrary, we view the provision as having the purpose of establishing equality of treatment to persons disqualified by remarriage on

the one hand with persons who would live with persons of another gender without marriage on the other.

The appellant's final argument is that the Board abused the discretion conferred on it by Section 307's use of the phrase "the board may order . . . termination." We disagree. Whatever equities exist in the appellant's case were recognized by the Board's action of suspending rather than terminating benefits—an action not contested by the employer.

ORDER

AND NOW, this 17th day of February, 1976, it is Ordered that the appeal of Betty J. Worley be and it is hereby dismissed and that the decision of the Workmen's Compensation Appeal Board be and it is affirmed.