563 A.2d 236

**HESS BROTHERS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GORNICK), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 23, 1989.

Decided Aug. 24, 1989.

John P. Thomas, Allentown, for petitioner.

F. Paul Laubner, Samuel A. Scott, Allentown, for Paul Gornick.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

Hess Brothers (Employer) appeals an order of the Workmen's Compensation Appeal Board (Board) reversing a referee's decision granting Employer's petition for termination on the basis that Mary Anne Gornick (Claimant), the widow of Paul Gornick (Decedent), was living in a meretricious relationship under Section 307 of The Pennsylvania Workmen's Compensation Act (Act)[1]. We affirm.

Employer filed a petition on January 25, 1984, for termination of compensation benefits payable to Claimant as of January 15, 1978, on the grounds that Claimant was living in a meretricious relationship. The referee took testimony at hearings dated February 13, 1984, February 22, 1984, and August 29, 1984, and on October 15, 1985, issued a decision sustaining Employer's petition effective January 23, 1984, and denying the petition as of January 15, 1978, to January 22, 1984. (Referee's Decision, October 15, 1985, at 3–4.)

The referee made these relevant findings of fact:

1. The husband of Claimant Mary Anne Gornick, Paul Gornick, died on June 13, 1975 due to a work-related injury, as a result thereof a Compensation Agreement dated July 29, 1975 was entered into by Claimant and Defendant employer/insurer providing for payment of compensation to Claimant at the rate of $164.80 per week from June 13, 1975 to September 30, 1978 in her on [sic] behalf and that of her minor son, Paul, Jr., at which latter

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 562, which states in pertinent part:

Should any dependent of a deceased employe die or remarry, or should the widower become capable of self-support, the right of such dependent or widower to compensation under this section shall cease except that if a widow remarries, she shall receive one hundred four weeks compensation at a rate computed in accordance with clause 2 of section 307 in a lump sum after which compensation shall cease: Provided, however, That if, upon investigation and hearing, it shall be ascertained that the widow or widower is living with a man or woman, as the case may be, in meretricious relationship and not married, or the widow living a life of prostitution, the board may order the termination of compensation payable to such widow or widower.

date Paul, Jr. attained the age of 18, whereafter Claimant was to receive compensation at the rate of $140.08 per week for the duration of widowhood.

2. Claimant, presently 49 years of age, has not formally remarried following the death of her husband on June 13, 1975.

3. Claimant Mary Anne Gornick and her deceased husband purchased a two story row house located at 1123 Union Street, Allentown, Pennsylvania on January 16, 1969, and Claimant, her husband, and 2 children resided at said location to the time of her husband's death and Claimant and her 2 children continued to reside at said location thereafter to December 1980.

4. A man, then married to one other than Claimant, resided at the Union Street single family dwelling with Claimant from January 1978 to December 19, 1978, at which time the divorce of said man became final, and he continued living at said location to December 1980.

5. Claimant and the then unmarried male purchased a single family dwelling on November 20, 1980 as joint tenants with the right of survivorship, and Claimant and the unmarried male and Claimant's son have resided at the purchased residence from December 1980 to the present.

6. Claimant and the unmarried male jointly entered into two mortgage agreements as mortgagors for the residence purchased on November 20, 1980, the second mortgage being satisfied on January 17, 1983.

7. Claimant and the unmarried male maintain a joint checking account with either to draw on said account, and checks drawn on the account by both Claimant and the unmarried male are used for purposes both related and non-related to the residence.

8. Claimant cooks evening meals for herself, her son and the unmarried male, and the 3 usually eat together.

9. Claimant and the unmarried male, together with Claimant's son and others, went on vacation together in 1980.

10. Claimant sold the property at 1123 Union Street on May 5, 1981.

11. Claimant contends that she never had sexual relations with the unmarried male, they never held themselves out as husband and wife, and they never go out together socially except for having dinner together on one occasion, and the Referee rejects Claimant's testimony as not being reliable or trustworthy.

12. Claimant has been living with a man in meretricious relationship and not married on and before January 23, 1984 and continuing to the present.

Referee's Decision at 3–4.

Claimant appealed the referee's decision and the Board reversed, stating:

[T]he burden of proof in this matter was on the Defendant, as the moving party, to prove that Claimant was involved in a meretricious relationship; it was not the Claimant's burden to prove that she was not so involved.

. . . :

Having carefully reviewed the entire record in the case at bar, it is the determination of this Board that Defendant wholly failed to meet its burden of proof. There is not a scintilla of relevant evidence, testimonial or other, on the ultimate issue in this matter: Is Claimant living with a man in a meretricious relationship? Yes, Claimant is living with a man to whom she is not married. Whether or not the relationship is carnal in nature cannot be determined from the record. Clearly, because the Decision and Order of the Referee are not supported by substantial evidence, they cannot stand.

Opinion of the Board, August 19, 1987, at 2–3.

■ Our scope of review is limited to determining whether the Board committed an error of law, made fact findings supported by substantial evidence, or violated constitutional rights. *Gabriel v. Workmen's Compensation Appeal Board (No. 1 Contracting Corp.)*, 102 Pa.Commonwealth Ct. 470, 518 A.2d 895 (1986). Employer argues solely that

the Board erroneously reversed the referee because the referee's findings were supported by substantial evidence.

■■ Fundamental to workmen's compensation law, is that it is solely within the referee's discretion to find facts, and, if the facts as found by the referee rest on competent evidence, neither the Board nor this Court may disturb them. *Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa.Commonwealth Ct. 176, 305 A.2d 757 (1973). The referee, as factfinder, has exclusive province over questions of credibility and evidentiary weight. In the exercise of broad discretion, the referee may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Mardee Sportswear v. Workmen's Compensation Appeal Board (Franglo, Inc.)*, 98 Pa.Commonwealth Ct. 327, 511 A.2d 905 (1986).

■■ The referee factually determined that Claimant was living in a meretricious relationship based upon undisputed testimony that Claimant, her adult son, and an unmarried male reside together in a home, title to which is held by Claimant and the unmarried male, as joint tenants with the right of survivorship; that Claimant and the unmarried male maintain at least one joint bank account, with either party to sign; that Claimant cooks for herself, her son, and the unmarried male; and that they usually eat together. Claimant testified she never had sexual relations with the unmarried male; they never held themselves out as husband and wife; and that they do not go out together socially.

The referee rejected Claimant's testimony as unreliable and not trustworthy. The Board acknowledged the referee's credibility determination, but concluded that the referee's conclusion was not supported by substantial evidence. We have reviewed the testimony and find that it does not constitute such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Lehman v. Workmen's Compensation Appeal Board*

*(Temple University Hospital)*, 64 Pa.Commonwealth Ct. 381, 439 A.2d 1362 (1982).

In *BethEnergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sadvary)*, 117 Pa.Commonwealth Ct. 465, 543 A.2d 1268 (1988), *appeal granted*, 520 Pa. 608, 553 A.2d 969, 972 (1988). The referee found that a meretricious relationship existed between a widow and an unmarried male and the Board accepted this finding, but found that the economic effect of terminating benefits to a forty-eight year old widow living in an economically depressed area, who had not worked in fifteen years, and who was now totally dependent upon these benefits for support, would be devastating. The Board found that the claimant had ceased her meretricious relationship with the filing of the employer's termination petition and that it would exercise its "discretionary" authority under Section 307 and deny Employer's petition. *Id.*, 117 Pa. Commonwealth Ct. at 467, 543 A.2d at 1269. Our Court reversed the Board's decision stating:

> We recognize the good intentions of the Board, but such intentions are just as likely to create arbitrary chaos in an attempt to achieve social justice as to achieve such justice. Far better for the legislature to rectify the harsh results of Section 307(7) by bringing the statute into conformity with the modern age than to permit the Board to substitute itself for the legislature as the arbitrator of morality on a case by case basis according to its own views.

*BethEnergy*, 117 Pa.Commonwealth Ct. at 469, 543 A.2d at 1270.

The matter *sub judice*, is distinguishable. In *BethEnergy*, substantial evidence supported the referee's finding that the claimant was living in a meretricious relationship.[2] Sim-

---

2. In that case, the employer retained a private investigation firm which established through surveillance that claimant was living with another man who was at the time separated from his wife. The claimant admitted that she lived with this man for a period of one year, that she was not married to him, and that their relationship included sexual relations. *BethEnergy*, 117 Pa.Commonwealth Ct. at 466–467, 543 A.2d at 1269.

ilarly, in *Jones Motors v. Workmen's Compensation Appeal Board (Moyer)*, 51 Pa.Commonwealth Ct. 210, 414 A.2d 157 (1980); [3] *Nevius v. Workmen's Compensation Appeal Board (I. Reindollar and Sons, Inc.)*, 52 Pa.Commonwealth Ct. 418, 416 A.2d 1134 (1980); [4] and *Workmen's Compensation Appeal Board v. Worley*, 23 Pa.Commonwealth Ct. 357, 352 A.2d 240 (1976) [5] there was no question that the claimant had engaged or was engaging in a meretricious relationship to warrant the termination of benefits.

After a thorough review of the record we conclude as a matter of law that there was not substantial evidence to support the referee's finding that Claimant was involved in a meretricious relationship. Accordingly, because we find no substantial evidence in the record to support the referee's findings, we affirm the Board's order.

3. In *Jones*, the issue was whether Section 307 of the Act and a finding that a widow entered into a meretricious relationship, permitted a suspension, in lieu of a complete and permanent cessation, of benefits where the meretricious relationship had ended. The referee's finding that the claimant had in fact entered into a meretricious relationship was not challenged as being unsupported by substantial evidence. This Court concluded that the Board had the power to terminate compensation payable to the widow, but it did not have the power to merely suspend the compensation being paid her during the period of the meretricious relationship established by the record.

4. In *Nevius*, this Court affirmed the Board's suspension of benefits under Section 307 of the Act to a claimant who lived with an unmarried male while receiving death benefits. The record indicated that the couple shared housekeeping, grocery shopping, and cooking and the Claimant acknowledged that the relationship was carnal. This Court concluded in *Nevius*, and in *Jones*, that:

> It seems apparent that the legislature, by the wording of Section 307, provided, as a requirement for the continuation of benefits to a widow, that she forego any meretricious relationship and not live a life of prostitution. A contrary reading of Section 307 would tend to encourage behavior which would not likely be acceptable or countenanced by the legislature.

*Jones*, 51 Pa.Commonwealth Ct. at 213, 414 A.2d at 159; *Nevius*, 52 Pa.Commonwealth Ct. at 422, n. 3, 416 A.2d at 1137, n. 3.

5. In *Worley*, this Court affirmed the Board's suspension of benefits to a claimant who cohabited with a man married to another, with whom she subsequently had a child. The Court dismissed claimant's argument that even though they lived together and had a child together, their relationship was not meretricious because they did not purport or hold themselves out to be married.

248

## ORDER

AND NOW, this 24th day of August, 1989, the order of the Workmen's Compensation Appeal Board dated August 19, 1987, at No. A–90824, is hereby affirmed.